UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **DARRELL A. SADDORIS**, | ) | CASE NO. 4:12cv1851 |
| | ) | |
| PLAINTIFF, | ) | **JUDGE SARA LIOI** |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| **UNITED STATES OF AMERICA**, | ) | **AND ORDER** |
| | ) | |
| DEFENDANT. | ) | |

*Pro se* plaintiff Darrell A. Saddoris ("plaintiff" or "Saddoris") filed this action against the United States under 42 U.S.C. § 1983, the Inmate Accident Compensation Act, 18 U.S.C. § 4126 ("IACA"), and the Federal Tort Claims Act, 28 U.S.C. § 2679 ("FTCA"). In the complaint, plaintiff alleges he was injured while performing duties of his work assignment at the Federal Correctional Institution in Elkton, Ohio ("FCI-Elkton"). He seeks $319.70 for lost wages from his prison work assignment, and $2,125,000.00 for improper medical care by FCI-Elkton staff.

**I. BACKGROUND**

Plaintiff alleges he injured his right knee while performing tasks for the FCI-Elkton vocational training detail on May 14, 2009. He indicates he was moving commercial washers and dryers in and out of the inmate housing units. The rubber stoppers on the appliance dolly plaintiff was operating had worn off. Plaintiff contends this caused the dolly to slip on the concrete stairs, resulting in the injury to his knee, which he alleges rendered him unable to continue working in the vocational training detail where he earned $90.00 per month. Instead, plaintiff contends he was transferred to an orderly job, which paid only $12.00 per month.

Plaintiff states he was sent to the prison infirmary immediately after the injury

occurred. He indicates a nurse instructed him to rest his knee, keep it elevated and apply ice. The swelling and pain in the knee increased over the next several days, and he reported to sick call. He was told to return in three days for an evaluation by a physician. A magnetic resonance imaging ("MRI") was scheduled. It took 3 months for an appointment to be secured. During that time, plaintiff claims he began to experience pain associated with "popping sounds." He again reported to sick call and was told nothing additional could be done until the results of the MRI were available. When the MRI was finally conducted, it revealed a knee effusion ("water on the knee")[1], a vertical tear of the posterior horn of the medial meniscus,[2] and osteochondral defects to the anterior distal lateral femoral condyle.[3] The physician's assistant at FCI-Elkton told him that the injury would take several months to heal and instructed him to limit his activities.

        Plaintiff contends he was seen by Dr. Ward at sick call on March 22, 2010. He indicates the physician began to yank, twist, and pull on the injured knee causing him extreme pain. He contends Dr. Ward told him he was just aging, and advised that he should "stop acting like a baby and go out and run and work it out." (Doc. No. 1 at 7.)

        Plaintiff returned to sick call on April 16, 2010 and was seen by physician's assistant Flatt. He told the physician's assistant that the knee was worse after his visit with Dr. Ward. Flatt requested a second MRI, but the request was denied. He initiated a grievance to obtain the MRI, and as a result, the second MRI was approved. The second MRI revealed the

---

[1] "Water on the knee is a general term for excess fluid accumulation in or around your knee joint." *Water on the knee*, MAYO CLINIC (June 16, 2012), http://www.mayoclinic.com/health/water-on-the-knee/DS00662.

[2] The medial meniscus and lateral meniscus are "[t]wo crescent-shaped formations of cartilaginous material . . . located in the knee joint, fastened to the top end of the tibia (shin bone). . . . They act as a cushion for the overlying femur . . . ." 1 LEE R. RUSS, ET AL., ATTORNEYS MEDICAL ADVISOR § 2:51 (2012), *available at* Westlaw Attorneys Medical Advisor.

[3] The lateral and medial femoral condyles are "the two projections of bone at the lower end of the femur which meet (articulate with) the tibia." 3 LEE R. RUSS, ET AL., ATTORNEYS MEDICAL ADVISOR § 28:150 (2012), *available at* Westlaw Attorneys Medical Advisor. *See also, definition of femoral condyle in the Medical dictionary*, THE FREE DICTIONARY BY FARLEX, http://medical-dictionary.thefreedictionary.com/femoral+condyle (last visited Dec. 27, 2012).

same result as the first MRI, and on August 17, 2010, plaintiff was referred to an orthopedic specialist, Dr. Jurenovich. On December 16, 2010, Dr. Jurenovich performed surgery on the knee.

Plaintiff asserts three claims for relief. First, he claims he is entitled to recover damages against the United States under the IACA, 18 U.S.C. §4126, because he was injured while performing his prison work assignment. Second, he claims the United States is liable under the FTCA, 28 U.S.C. § 2679, for the negligent acts of the FCI-Elkton medical staff. His third cause of action is stated only in his "Brief in Support of Claim" filed with his complaint, within which plaintiff claims FCI-Elkton medical staff acted with deliberate indifference to his serious medical needs in violation of 42 U.S.C. § 1983 . Because plaintiff is proceeding *pro se* and *pro se* litigants are entitled to a liberal reading of their pleadings, the Court will construe plaintiff's complaint as including a claim for violation of the Eighth Amendment under § 1983.

## II. STANDARD OF REVIEW

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in [the] complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009). The factual

allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Twombly*, 550 U.S. at 555. Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a complaint, the Court must construe the pleading in the light most favorable to the plaintiff.

### III. ANALYSIS

As an initial matter, plaintiff cannot bring a cause of action against the United States under § 1983. To establish a prima facie case under § 1983, plaintiff must assert that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Plaintiff is incarcerated in a federal prison facility and the employees of that facility are federal employees, not state officials. They act under color of federal law, not state law.

Pursuant to *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971), federal inmates may maintain a cause of action similar to that which is provided to state inmates under 42 U.S.C. §1983. A *Bivens* action, however, is a more limited cause of action. While a § 1983 action can be brought against a state under limited circumstances, a *Bivens* action can never be brought against the United States. The United States, as a sovereign, is immune from suit unless it explicitly waives its immunity, and it has not waived its immunity for a *Bivens* action. *See Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 484-86 (1994); *Okoro v. Scibana*, No. 02-1439, 2003 WL 1795860 at *1 (6th Cir. April 1, 2003) (stating that a federal prisoner cannot bring a *Bivens* action against the Bureau of Prisons).

Moreover, the Court lacks subject matter jurisdiction to entertain the claims asserted in this action under *Bivens,* the FTCA, or the IACA. The IACA, 18 U.S.C. § 4126, a subsection of the Prison Industries Fund statute, is the exclusive means of recovery for a federal prisoner injured in the performance of an assigned task while confined in a federal prison. *United States v. Demko*, 385 U.S. 149, 151 (1966); *Fraley v. Dep't of Justice*, No. 95–5666, 113 F.3d 1234 (Table), 1997 WL 225495, *2 (6th Cir. May 1, 1997). The cause of the injury is irrelevant so long as the injury itself occurred while the prisoner was on the job. *Wooten v. United States*, 825 F.2d 1039, 1044 (6th Cir. 1987).

Plaintiff asserts causes of action based on his work-related injury and the medical treatment he received thereafter. Both of these claims are governed by the compensation scheme outlined in § 4126. First, plaintiff alleges he was performing his duties in the course of his vocation training detail when the dolly he was using to move appliances slipped on the stairs. He does not provide information on the nature of the vocation training detail; however, he does indicate he earned approximately $90.00 per month for the work he performed. The Code of Federal Regulations defines a work-related injury as "any injury, including occupational disease or illness, proximately caused by the actual performance of the inmate's work assignment." 28 C.F.R. § 301.102(a). Plaintiff's knee injury falls clearly within this definition and, therefore, the IACA is the exclusive means of recovery for this injury.

Plaintiff also alleges that after the injury he received inadequate medical care at FCI-Elkton. In *Wooten*, the court reasoned, "Section 4126 is also the exclusive remedy when a work-related injury is subsequently aggravated by negligence and malpractice on the part of prison officials[.]" *Wooten*, 825 F.2d at 1044; *see* 28 C.F.R. § 301.301(b). Plaintiff alleges the medical staff at FCI-Elkton delayed in getting an MRI, aggravated his injury by improperly

5

treating it, and delayed his referral to a surgeon. This claim also falls squarely under the Sixth Circuit's holding that the IACA is the exclusive remedy for plaintiff's claim pertaining to inadequate medical care subsequent to his injury. *Wooten*, 825 F.2d at 1044.

Although plaintiff has a remedy under the IACA, he must pursue this remedy through the correctional institution as prescribed by 28 C.F.R. § 301.303(a). Accordingly, this Court lacks subject matter jurisdiction to entertain plaintiff's claims under the IACA.

Further, because the IACA is the exclusive remedy through which federal inmates employed in federal prison work programs can seek compensation for work-related injuries, it preempts plaintiff's FTCA claims. Moreover, three panels of the Sixth Circuit have specifically held that the IACA bars *Bivens* claims as well. *Springer v. United States*, No. 99–6276, 2000 WL 1140767, at *1 (6th Cir. Aug. 8, 2000); *Walls v. Holland*, No. 98–6506, 1999 WL 993765, at *1 (6th Cir. Oct. 18, 1999); *Fraley v. Dep't of Justice*, No. 96–5666, 1997 WL 225495, at *1 (6th Cir. May 1, 1997). Accordingly, this Court lacks subject matter jurisdiction to entertain plaintiff's claims under either the FTCA or *Bivens*.

## IV. CONCLUSION

For all the foregoing reasons, this action is dismissed pursuant to 28 U.S.C. § 1915(e). Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[4]

**IT IS SO ORDERED**.

Dated: December 28, 2012

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**

---

[4] 28 U.S.C. § 1915(a)(3) provides, in pertinent part, "An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith."